Frank P. PARISH, Mrs. Theodore Fisher Parish

v.

MARYLAND AND VIRGINIA MILK PRODUCERS ASSOCIATION, INC., et al.

Civ. No. B–75–1104.

United States District Court, D. Maryland.

Sept. 15, 1977.

624

Frank P. Parish, pro se.

Edward L. Merrigan, Washington, D. C., for Maryland and Virginia Milk Producers Assn., Inc., Edward L. Merrigan, James E. Click, Directors of Maryland and Virginia Milk Producers Assn., Inc., Charles C. T. Stull, Merhl A. Adams, H. Lehman Toms, Upton F. Gladhill, Paul B. Harlan, Alton A. White, Harry W. T. Fouche, W. J. Hahn, Howard W. Clark, J. Homer Remsberg, Willis D. Remsberg, Lester W. Huff, Edward C. Norman, and Giles H. Miller.

M. Peter Moser, Jay I. Morstein, Baltimore, Md., for Robert M. Goldman and J. Robert Sherwood.

Harlan L. Weiss, Chevy Chase, Md., for William B. Hooper.

Jervis S. Finney, U. S. Atty., Thomas L. Crowe, Baltimore, Md., and David J. Anderson, Alexis Panagakos, Attys., Dept. of Justice, Washington, D. C., for Earl H. Butz.

Wilbur D. Preston, Jr., William B. Whiteford and Nevett Steele, Jr., Baltimore, Md., Thomas A. Henning, Towson, Md., for Herbert M. Brune and Harrison M. Robertson, Jr.

John J. O'Neill, Jr., Rockville, Md., for Charles Norman Shaffer.

Albert E. Brault, Rockville, Md., for Wayne Kendrick & Co.

Charles L. Richards, Silver Spring, Md., and Albert E. Brault, Rockville, Md., for Ernest C. Clifford.

Arthur F. Mathews, Stephen F. Black, John F. Rounsaville, Jr., Washington, D. C., and Andre W. Brewster, Edward S. Digges, Jr., Baltimore, Md., for Price Waterhouse & Co.

Edward H. Hatton, Arthur M. Sussman, Jenner & Block, Chicago, Ill., and David C. Daneker, Baltimore, Md., for United Dairy Industry Assn., and Mr. Glen Lake and American Dairy Assn., and Directors thereof from 1963 to present date.

Alan R. Sachs, Baltimore, Md., for Interstate Milk Producers Cooperative.

Wayne H. Hoecker, George P. Coughlin, Kansas City, Mo., and Robert B. Barnhouse, Baltimore, Md., for Mid-American Dairy Assn. Member of United Dairy Industry Assoc.

Wm. B. Somerville, Jon H. Grube, Smith, Somerville & Case, Baltimore, Md., for Thomas J. Michie.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

The court will not attempt to recount the history of this quixotic odyssey which threatens to become a latter day *Jarndyce v. Jarndyce*.[1] The earlier campaigns of this crusade are described fully in *Parish v. Maryland & Va. Milk Producers Ass'n*, 250 Md. 24, 242 A.2d 512 (1968) (*Parish I*), and *Parish v. Maryland & Va. Milk Producers Ass'n*, 261 Md. 618, 277 A.2d 19, *cert. denied*, 404 U.S. 940, 92 S.Ct. 28, 30 L.Ed.2d 253 (1971) (*Parish II*). The amended complaint[2] analytically consists of three distinct parts. The first encompasses a plethora of allegations about the legal relationship between Maryland and Virginia Milk Producers Association [Association] and its members. The second relates to the level of federal milk price supports and the third concerns the quality of the representation provided by the attorneys plaintiffs retained in the *Parish I* and *Parish II* litigation. In apparent recognition of the validity of defendants' motions to dismiss based on the lack of complete diversity between the parties, plaintiffs abandoned diversity as the asserted basis of jurisdiction in their amended complaint and rely instead on numerous federal statutes as well as the general equity jurisdiction of the court. All

---

1. C. Dickens, Bleak House (1852) (passim).

2. As with many, if not most, *pro se* pleadings, the amended complaint in this case is not precisely drawn. The caption to the amended complaint names as defendants forty-six individuals, five associations, three federal employees or organizations, and two partnerships. The amended complaint which is fifty pages long containing 114 numbered paragraphs mentions only thirty-one defendants by name although certain persons enumerated in the caption are described by title or position rather than by name.

 One defendant, William J. Hughes, Jr., is apparently deceased and neither he nor his estate has been served. Defendants Goldman and Sherwood, who are named in their capacities as executors of the Robinson estate, have moved to dismiss or quash return of service on the ground that service was insufficient (Paper 9). Goldman's and Sherwood's affidavits, as well as the affidavit of their attorney, reveal that service was effected on Peter Mosner rather than Goldman and Sherwood. The affidavits further indicate that Mr. Mosner was not authorized to be an agent to accept service of process for either Goldman or Sherwood. Plaintiffs' response (Paper 13) to the Goldman-Sherwood motion to dismiss does not refute or contest the defendants' affidavits and their motion to quash therefore will be granted. *Cf. Bricklayers' Int'l Union v. Seymour Ruff & Sons, Inc.*, 160 Md. 483, 154 A. 52, 55–56 (1931).

 Defendants Toms and Miller have also moved to quash service of process based on plaintiffs' failure to comply with Maryland Rules of Procedure 104(b)(2) and 107(a)(2). (Paper 15).

 The two rules, which apply to service by registered mail within and outside of Maryland respectively, require that an affidavit be filed stating first, that the summons was mailed to the defendant and second, that they were in fact received as evidenced by the defendant's signature on the return receipt. The return receipts for both Toms and Miller indicate that persons other than the defendants were served. Plaintiffs' reply to the motion is unresponsive on this issue. (Paper 33). The motion of Toms and Miller to quash service of process will be granted.

 Defendant Mid-America Dairymen, Inc. (incorrectly denominated as the Mid-American Dairy Association in the complaint) has moved to dismiss on the ground that the court lacks personal jurisdiction over it. (Paper 27). Mid-America asserts that it is an agricultural cooperative marketing association incorporated in Kansas, which conducts no activities in Maryland sufficient to bring it within the ambit of the Maryland long arm statute, *Annotated Code of Maryland*, Cts. & Jud. Proc. Art., § 6–103 (1974). Although they argue to the contrary (Paper 45), plaintiffs have not satisfied their burden of alleging adequate jurisdictional facts. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Nor does the fact that Mid-America is an alleged coconspirator of any consequence because plaintiffs' conclusory allegations are insufficient to invoke the conspiracy theory of jurisdiction. *See Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1341 (2d Cir. 1972). Mid-America's motion to dismiss will be granted.

defendants have moved to dismiss for a variety of reasons.

■ The defendants have raised res judicata as a bar to this action. The heart of the res judicata doctrine is the public policy that all litigation must at sometime end, and once tried, issues which were tried or should have been tried are settled forever, as between the parties. *Baldwin v. Iowa State Traveling Men's Ass'n,* 283 U.S. 522, 525, 51 S.Ct. 517, 75 L.Ed. 737 (1931); *Beall v. Kearney & Trecker Corp.,* 350 F.Supp. 978, 981 (D.Md.1972). While every person has the fundamental right to be heard, there is no public policy in favor of allowing him an opportunity to raise the same issues in a second forum. *See Eisel v. Columbia Packing Co.,* 181 F.Supp. 298, 301 (D.Mass. 1960).

■ A comparison of the first three causes of action in the amended complaint with the extensive and detailed *Parish I* and *Parish II* opinions shows that plaintiffs are attempting to relitigate claims that were presented and decided adversely to them in the state proceedings. This court sits neither as a second chance forum for losing litigants nor as a court of appeals reviewing decisions of state appellate courts. Whether the analytical base is res judicata, full faith and credit, or outright lack of jurisdiction, it is clear that the plaintiffs' first three causes of action must be dismissed. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Tang v. Appellate Division of N. Y. Sup. Ct. First Dept.,* 487 F.2d 138, 141 (2d Cir. 1973), *cert. denied,* 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974); *Resolute Ins. Co. v. North Carolina,* 397 F.2d 586, 589 (4th Cir.), *cert. denied,* 393 U.S. 978, 89 S.Ct. 446, 21 L.Ed.2d 439 (1968); 28 U.S.C. § 1738.

■ Res judicata, however, is not a bar to the fourth and fifth causes of action because they were neither litigated nor could they have been litigated in the state proceedings. Despite plaintiffs' assertion to the contrary, the only proper defendants to the fourth cause of action are the Federal Defendants.[3] The remaining defendants' motions to dismiss the fourth cause of action will be granted. In paragraph 66 plaintiffs allege:

> The decisions of the Secretary of Agriculture increasing the milk price support level have been arbitrary, capricious, unlawful and entirely lack the support of proper accounting reports of receipts and disbursements by milk cooperatives resulting from sale and disposition of milk and other property held in trust as above alleged.

Plaintiffs seek an injunction prohibiting the issuance of any milk price supports until the Maryland and Virginia Milk Producers Association issues annual certified operating statements. The Federal Defendants have moved do dismiss on the grounds that the plaintiffs lack standing to challenge the Secretary's milk support decisions. Plaintiffs respond by quoting from paragraph 4 of the amended complaint where they allege that this action is brought "on their own behalf as producers of milk consigned" to the Maryland and Virginia Milk Producers Association. Plaintiffs' membership in the Association, however, ceased in 1966 and they no longer have standing to bring this action as an association member. *See Armstrong v. Frostie Co.,* 453 F.2d 914, 917. (4th Cir. 1971); *Kenrich Corp. v. Miller,* 377 F.2d 312, 314 (3d Cir. 1967).

Although plaintiffs contend in paragraph 67 that they are consumers of milk and taxpayers affected by the level of milk price supports, plaintiffs have not responded to the Federal Defendants' assertion that they lack standing in these capacities and indeed, they cannot. The court in *Nader v. Butz,* 398 F.Supp. 390 (D.D.C.1975), denied plaintiffs leave to file a second amended complaint similar to the amended complaint in this action. The court stated:

> Plaintiffs would prosecute their second amended complaint "on their own behalf

---

3. The Federal Defendants are the Secretary of Agriculture, the Commodity Credit Corporation and Producer Agency of F.O. # 4.

and on behalf of all consumers of milk and milk products, and of all taxpayers." But as either consumers of milk or taxpayers, they lack standing to bring this claim. *Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974); see *United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

398 F.Supp. at 400. The *Nader* holding is fully applicable to this action and plaintiffs' fourth cause of action will be dismissed.[4]

Plaintiffs' fifth cause of action alleges that the defendant attorneys conspired to deprive the plaintiffs of their civil rights in violation of 42 U.S.C. § 1985 by failing to allege and prove that a trust relationship existed between the plaintiffs and the Association. It is apparent that this cause of action must be dismissed for several reasons.

 Assuming that plaintiffs first discovered they had been wronged on May 5, 1971, the date *Parish II* was decided, plaintiffs waited over four years before instituting this action on August 11, 1975. The Maryland three year statute of limitations, *Annotated Code of Maryland,* Cts. & Jud. Proc. Art., § 5–101 (1974), which applies to actions brought pursuant to section 1985, bars plaintiffs' fifth cause of action. Even if the allegations were timely filed, they would nevertheless be dismissed because

plaintiffs have failed to satisfy the standard enunciated in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). There the Court stated:

> The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means there must be some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action.

403 U.S. at 102, 91 S.Ct. at 1798 (emphasis original). A close reading of the complaint shows that it is totally devoid of any hint or suggestion of class-based discriminatory intent, e. g., that persons in a class different than plaintiffs' would have been accorded treatment different from that plaintiffs received. Hence no cause of action is stated. *Stephens v. City of Plano,* 375 F.Supp. 985, 987–88 (E.D.Tex.1974); *Brosten v. Scheeler,* 360 F.Supp. 608, 614 (N.D.Ill.1973), aff'd, 495 F.2d 1375 (7th Cir. 1974). Finally, plaintiffs' conclusory allegations, at best, concern only a private conspiracy which does not fall within the ambit of section 1985. *Doski v. M. Goldseker Co.,* 539 F.2d 1326, 1334–35 (4th Cir. 1976). Defendants' motions to dismiss the fifth cause of action will be granted.

Several of the non-federal defendants have moved for the award of costs. Federal Rule of Civil Procedure 54(d) authorizes that costs be allowed as a matter of course to prevailing parties. Under the American Rule "governing the award of attorneys'

---

4. The Federal Defendants' alternative ground for dismissal is equally valid. In paragraph 64, plaintiffs allege that the Secretary of Agriculture must consider the factors listed in 7 U.S.C. § 1421(b) when he sets the milk price support level. Plaintiffs fail to recognize that the nine factors apply "[e]xcept as otherwise provided" in the Agricultural Act of 1949. Milk price support levels are governed not by section 1421, but by 7 U.S.C. § 1446 which provides in pertinent part:

> The Secretary is authorized and directed to make available (without regard to the provisions of title III [7 U.S.C. §§ 1447–49]) price support to producers for tung nuts, honey and milk, as follows:

> · · · · ·

> · · · · ·

> (c) The price of whole milk shall be supported at such level not in excess of 90 per

centum nor less than 75 per centum of the parity price therefor as the Secretary determines necessary in order to assure an adequate supply of pure and wholesome milk to meet current needs, reflect changes in the cost of production, and assure a level of farm income adequate to maintain productive capacity sufficient to meet anticipated future needs. . . .

Plaintiffs have not alleged that the Secretary of Agriculture has abused the discretion vested in him by section 1446(c) and therefore have failed to state a cause of action whether or not they have standing. *See United States v. Swift & Co.,* 152 F.Supp. 738, 742–43 (D.Md.1957), aff'd, 257 F.2d 787 (4th Cir.), *cert. denied,* 358 U.S. 837, 79 S.Ct. 60, 3 L.Ed.2d 73 (1958).

fees in litigation in the federal courts . . attorneys' fees 'are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor'." *F. D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 126, 94 S.Ct. 2157, 2163, 40 L.Ed.2d 703 (1974). An exception to the American Rule, however, permits the award of attorneys' fees to the prevailing party when the losing party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Alyeska Pipeline Co. v. Wilderness Soc'y,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975); *F. D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. at 129, 94 S.Ct. 2157.

▆ The court is required by *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), to give *pro se* complaints a liberal construction. Under that standard the court concludes that plaintiffs' conduct has not been sufficiently egregious so as to justify the award of attorneys' fees as part of the defendants' costs. As discussed *supra,* plaintiffs are barred from the further relitigation of the claims found in the first three causes of action, notwithstanding plaintiffs' desire that this court declare the *Parish II* decision to be "totally without legal significance and a complete nullity." In addition, plaintiffs' conspiracy claims found in the fifth cause of action are patently frivolous. Plaintiffs therefore are put on notice that any further attempt[5] to litigate the claims in the first, second, third, and fifth causes of action may result in the assessment of costs, including attorneys' fees, by any court having jurisdiction over the parties because such relitigation would be in bad faith or for purposes of harassment.

5. This is the fourth action brought by the plaintiffs against the Maryland and Virginia Milk Producers Association. Plaintiffs' original suit against the Association was filed in the Circuit Court for Baltimore County, Maryland on January 24, 1965 and was dismissed on February 8, 1965. *Parish v. Maryland & Va. Milk Producers Ass'n, Inc.,* Equity No. 54599 78/19 (Baltimore County, Md. Cir. Ct.). In the interim, plaintiffs filed *Parish v. Maryland & Va. Milk Producers Ass'n, Inc.,* Equity No. 29,524 (Mont-

Accordingly, it is this 15th day of September, 1977, ORDERED that plaintiffs' claims be, and hereby are, DISMISSED.

gomery County, Md. Cir. Ct.) on February 4, 1965. The full history of that case can be found in the *Parish I* and *Parish II* opinions cited earlier. On August 8, 1973 plaintiffs filed suit in the Circuit Court for Frederick County, Maryland. That action was dismissed without prejudice on November 13, 1973. *Parish v. Maryland & Va. Milk Producers Ass'n, Inc.,* Equity No. 24,465 (Frederick County, Md. Cir. Ct.). This suit was instituted August 11, 1975.